NEW ENGLAND INS. CO. (WILLIAMS v.).
See Case No. 17,731.

NEW ENGLAND MARINE INS. CO. (HAZARD'S ADM'R v.). See Case No. 6,282.

NEW ENGLAND MARINE INS. CO. (MAGOUN v.). See Case No. 8,961.

NEW ENGLAND MUT. INS. CO. (DUNHAM v.). See Case No. 4,152.

NEW ENGLAND MUT. LIFE INS. CO. (ARTHUR v.). See Case No. 565.

NEW ENGLAND MUT. MARINE INS. CO. (DOLE v.). See Case No. 3,966.

---

## Case No. 10,155.

NEW ENGLAND MUT. MARINE INS. CO. v. DUNHAM.

[3 Cliff. 332, 371.] [1]

Circuit Court, D. Massachusetts. May Term, 1871. [2]

**MARINE INSURANCE—DAMAGES FROM COLLISION— EFFECT OF PRIOR RECOVERY FROM OWNER OF COLLIDING VESSEL.**

1. Where a vessel is insured, suffers loss and damage by collision with another vessel, and recovers from the owners thereof upon the ground that such vessel was in fault and the cause of the disaster. the amount so recovered is no bar to a further recovery from the underwriters. if it can be shown that the amount recovered in the collision suit is not equal to what it cost to repair ·the damages consequent upon the collision.

2. If the insured acts with diligence and in good faith he may pursue his remedy against the colliding vessel. and then. in his adjustment with his underwriters, he is obliged to account only for what he received from the owners of the vessel in fault.

3. The owners of the injured vessel may proceed and recover, and if they recover full satisfaction, or without suit accept satisfaction, such satisfaction is a discharge of all the parties liable.

4. In this case the underwriters are liable for the damage by contract. and the vessel causing the injury, for a marine tort, and the party injured may elect against which he will proceed.

5. The well-settled rule in collision cases is, in the federal courts. that the damages assessed

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirming Case No. 4,152.] ·

against the respondent shall be sufficient to restore the insured vessel to the condition in which she was at the time the collision occurred, and that there shall not in insurance cases be any deduction for the new materials in place of the old.

6. While the district court has jurisdiction of marine insurance, it is not exclusive in consequence of section 9 of the judiciary act [1 Stat. 76].

[Appeal from the district court of the United States for the district of Massachusetts.]

On the 2d of March, 1863, the respondents contracted with the libellant [Thomas Dunham] as the owner of the barque, called the Albina, to insure the barque against the perils of the sea, mentioned in the policy of insurance in the sum of ten thousand dollars for the term of one year, which term was subsequently extended by an indorsement on the policy to the time of the arrival of the barque at her port of destination. Damage from perils of the sea was suffered by the barque on a voyage or passage from Cardiff to New York, but the barque put into the port of London, where she was fully repaired; and the case shows that the whole expense incurred for the repairs has been adjusted and paid by the underwriters. Thoroughly repaired, the barque, on the 7th of March, 1864, sailed on the voyage from London to New York, and on the 13th of the same month she came in collision with the ship Donald McKay, by which she was so much damaged that it became necessary for her to put back to London, where she was again repaired at the cost, as alleged, of £5,564 13s. 2d., and, having been so repaired, she sailed for her port of destination and arrived there in safety. Before leaving London, the master of the barque filed a libel in the admiralty court there against the ship, claiming damages for the injuries received by the collision, and a cross-suit was brought in behalf of the ship against the barque for the same purpose, alleging that the fault which occasioned the collision was committed by those in charge of the barque. Both causes were heard at the same time, and the court adjudged that the sole fault which occasioned the collision was committed by those in charge of the ship, and referred the cause to a registrar of the court to assess the damages. He allowed the sum of £4,634 7s. 5d., rejecting in whole or in part some of the expenses incurred for the repairs. His report was accepted by the court, and a decree was entered accordingly, and the amount allowed was paid to the libellant. After the barque arrived at her port of destination, the libellant caused an adjustment to be made, as of a partial loss, deducting from each item the sum allowed by the registrar, and, the respondents failing to pay the balance claimed, the libellant filed the libel in this case to recover the balance so found, together with fees and expenses of counsel and witnesses in that suit, with interest and exchange, as set forth in the adjustment. Appended to the agreed statement of facts was the stipulation that the cause should be sent to an assessor to ascertain the amount, if the court be of the opinion that the libellant was entitled to more than the amount allowed by the registrar. Hearing was had in the district court, and the court being of the opinion that a balance was due to the libellant beyond the sum allowed by the registrar, the parties appeared and modified their agreement that the cause should in that state of the case be sent to an assessor. Instead of that, each party filed an adjustment, and they agreed that each adjustment so filed should be treated and considered as an alternative report of an assessor, each party to be at liberty to object to the adjustment of the other, and the case to be subject to appeal by either party. For reasons not explained, it seems that the libellant recovered in the foreign court much less than the full amount of the repairs, and expenses made and incurred in consequence of the collision, and in the adjustment presented by the libellant he deducted the amount recovered and paid in the collision suit from the amount of the moneys expended in making the repairs and discharging the expenses incurred in consequence of the collision, which left a balance to be paid by the insurers. He admitted that in adjusting that balance so found, it was proper to make the computation by the rule applicable in insurance adjustments, that is, that one third new for old must be deducted, but he denied that that rule had any application in crediting the amount collected of the colliding vessel. On the contrary, he deducted the amount collected of the colliding vessel from the gross amount paid for the repairs, and the district court adopted his adjustment and entered a decree for the balance, amounting to $1,700.56 damages, and costs of suit. [Case No. 4,152.]

F. C. Loring, for libellant.

Hutchins & Wheeler, for respondents and appellants.

CLIFFORD, Circuit Justice. Amounts, it seems, were not in controversy, but the respondents differed widely from the libellant as to the correct rule of adjustment. They insisted that the partial loss should be first adjusted between them as the underwriters and the libellant, deducting one third new for old, and that the libellant could recover nothing of them in this case, as the loss, when so adjusted, did not exceed the amount paid by the colliding vessel or her owners. Suppose that to be the correct mode of adjusting the partial loss, then it is clear that the libel should have been dismissed, as the libellant was fully paid by the amount recovered in the collision case; but the district judge adopted the rule of adjustment

presented by the libellant, and entered a decree in his favor for the balance therein shown, and the respondents appealed to this court. Apart from the merits, when the cause came to be argued in this court, the respondents insisted that the district court had no jurisdiction of the cause of action set forth in the libel. Both parties were heard upon the question of jurisdiction as well as upon the merits, and the presiding justice entertaining doubts whether the district court, sitting in admiralty, had jurisdiction of the case, it was ordered that the question should be reargued, and the parties were heard a second time upon the question, the circuit judge sitting with the presiding justice. Difficulties attending the solution of the question and the opinions of the judges being opposed, the question was certified to the supreme court, where it was held that the contract of marine insurance is a maritime contract, and that libels of the kind exhibited in the record are properly cognizable in the district courts under the ninth section of the judiciary act, which provides that such courts shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction. Insurance Co. v. Dunham, 11 Wall. [78 U. S.] 21.

Judge Story decided in the same way in De Lovio v. Boit [Case No. 3,776], and that decision had been followed once or twice in this circuit before the decision of the district court in this case. Hale v. Washington Ins. Co. [Id. 5,916]; Gloucester Ins. Co. v. Younger [Id. 5,487]. Jurisdiction in admiralty under the constitution and laws of congress must be determined, in a great measure, by a just reference to the laws of the states, and the usages of the courts prevailing in the states at the time when the constitution was adopted. Cunningham v. Hall [Id. 3,481]. Conclusive evidence was exhibited in argument by the libellant in this case that the admiralty courts existing in the states before the constitution was adopted did exercise jurisdiction over such controversies, and in view of that fact and of the further fact that the better opinion is that the contract of marine insurance is a maritime contract, the supreme court came to the conclusion that jurisdiction in this case was properly assumed by the district court. Such jurisdiction, of course, is not exclusive in the admiralty, as suitors, by virtue of the saving clause in the ninth section of the judiciary act, have the right of a common law remedy in all cases where the common law is competent to give it, and the common law is as competent as the admiralty to give a remedy in such a case, as the suit must be in personam against the underwriters named in the policy. The Belfast, 7 Wall. [74 U. S.] 642; Leon v. Galceran, 11 Wall. [78 U. S.] 190. Determined as the question of jurisdiction has been by the supreme court, nothing remains open here but the single question as to the proper mode of adjustment. Other questions on the merits might have been raised, but the record does not exhibit any exception as to the amount allowed save what appears in the objection of the respondents to the rule of adjustment adopted by the court. Undoubtedly in insurance adjustments where timbers or other materials are replaced by new, the vessel when repaired is, in general, considered to be better than she was before the repairs were made, and the rule of adjustment is that the assured must himself bear one third part of the expense of the labor and materials for the repairs, for the reason that new timbers and materials are substituted for the old, which are supposed to have been of less value. 1 Phil. Ins. (4th Ed.) 50; 2 Phil. Ins. 1431; Peele v. Merchants' Ins. Co. [Case No. 10,905]; Bradlie v. Insurance Co., 12 Pet. [37 U. S.] 399. Much discussion of that topic, however, is unnecessary, as the general rule is everywhere acknowledged in the federal courts; but it is equally well settled that the rule in collision cases is that the damages assessed against the respondent shall be sufficient to restore the insured vessel to the condition in which she was at the time the collision occurred; that there shall not in insurance cases be any deduction for the new materials furnished in the place of the old. The Baltimore, 8 Wall. [75 U. S.] 385; Williamson v. Barrett, 13 How. [54 U. S.] 110; Sedgw. Dam. (4th Ed.) 541. Attempt was made in the court below to set up the decree in the foreign court as rendered in the collision case, and the payment of the amount recovered as a bar to any further claim by the libellant upon the respondents for any damages, costs, or expenses occasioned by the collision; but that defence is not urged in this court, as it clearly could not be with any hope that it would be successful. Judgments and decrees bind parties and privies, but it is clear that the decree in the foreign court was res inter alios, and that it cannot have any effect here except as evidence to show the amount recovered by the libellant in that proceeding. Murray v. Lovejoy [Case No. 9,963]; Id., 3 Wall. [70 U. S.] 17. Where a party receives damage, and several are responsible for the injury, the plaintiff is entitled to but one satisfaction, and if he proceeds against one, and recovers judgment, and the same is fully satisfied, or if he without suit accepts satisfaction of one of those liable for the injury, no doubt is entertained that such satisfaction discharges all the other parties. Grant that, still it is clear that that rule has no application in the case before the court, as the respondents are liable in contract as set forth in the policy of insurance, and the owners of the colliding vessel were liable as wrong-doers for a marine tort. Randal v. Cockran, 1 Ves. Sr. 98; Yates v. Whyte, 4 Bing. N. C. 272; White v. Dobinson, 14 Sim. 273.

Full satisfaction, though received from a wrong-doer as in this case, would doubtless operate as a discharge of the claim upon the underwriters; but it is equally certain that nothing short of a full satisfaction would have that effect in the absence of fraud or proof of collusion or negligence. Atlantic Ins. Co. v. Storrow, 5 Paige, 285. Persons insured are at liberty in such a case to sue the wrong-doer first, or they may claim compensation from the underwriters, and leave them to their remedy against the wrong-doer, which must be prosecuted in the name of the injured party. When the underwriters pay the loss they are subrogated to all the rights of the insured, but until they do make satisfaction they have no claim on any such wrong-doers. They have a right to expect that the insured will act with due diligence and in good faith, but they cannot be regarded as subrogated to the rights of the insured until they have made such satisfaction. Prior to such satisfaction being made by the underwriters, the insured may, if he sees fit. pursue his remedy against the wrong-doer, and of the acts with due diligence and in good faith, he is only obliged to account in his adjustment with the underwriters for what he receives from the wrong-doer. Such is the settled law in cases of fire insurance, and the same rule, in the opinion of the court, must be applied in marine insurance in cases where the suit against the wrong-doers is prosecuted by the insured. Where property in the city of New York, which was insured, was destroyed by order of the mayor and aldermen to prevent the spreading of the fire, and the assured afterwards obtained an assessment of his damages for the destruction of his property, by a jury in conformity to the law of the state, it was held by the chancellor that such assessment was not evidence, as between the assured and the underwriters, of the amount of the loss, and that the assured was entitled to recover of the insurers the whole amount of his loss in consequence of the fire, after deducting therefrom the net proceeds of what had been recovered from the corporation of the city, provided such balance did not exceed the sum for which the insurers were liable under the policy. Pentz v. Aetna Fire Ins. Co., 9 Paige, 569.

Apply that rule to the case before the court, and it is clear that the decree of the district court was correct, and for the reasons assigned by the district judge. He adopted the adjustment presented by the libellant, by which it appears that the amount paid by the owners of the colliding vessel was deducted from the whole expenses of the repairs, and that two thirds of the balance, that is, deducting one third new for old, were claimed of the underwriters. Certain other topics are discussed in the brief of the respondents, but it is not necessary to enter that field of discussion, as there are no exceptions raising any such questions.

Decree affirmed with costs.

[NOTE. In the case of the Equitable Safety Insurance Company, respondents and appellants, against Thomas Dunham, libelant, the circuit court of the United States for the district of Massachusetts. at the May term. 1871, per Clifford, Circuit Justice, and Shepley, Circuit Judge, affirmed the decree of the district court, the following opinion (3 Cliff. 371) being delivered:]

CLIFFORD, Circuit Justice. Appeal in admiralty from a decree of the district court in a cause of contract. Like the case New England Mut. Mar. Ins. Co. v. Dunham [supra], the matters in controversy were submitted to the court upon an agreed statement of facts. Reference to the record will show that all the questions involved in the pleadings are the same as those just decided in the other case, and the evidence adduced is also the same. so that the decision in that case controls the rights of the parties in this case. Decree affirmed with costs.